WHINFIELD, Respondent, vs. TRUSTEES OF THE DIOCESE OF FOND DU LAC, Appellant.

*February 26—March 17, 1914.*

*Principal and agent: Juggling of securities by agent for several persons: Transfer of title: Possession.*

1. One S., who was plaintiff's agent, was also the treasurer of the defendant corporation and as such had the keeping of its funds and securities. He was a defaulter to both parties. Having in his possession a note and mortgage belonging and payable to the plaintiff, he pretended to sell them to defend-

ant and converted to his own use the moneys paid therefor by defendant. No assignment or indorsement of the note or mortgage was ever made, and they remained in the possession of S. until his death, being kept a part of the time with defendant's securities and a part of the time with plaintiff's. The executor of S. turned them over to defendant. *Held* that, the equities of the parties being equal, plaintiff's legal title to the securities must prevail. ·

2. The possession of the securities by S. was as much plaintiff's possession as it was defendant's, and the mere exhibition of them to auditing committees of the defendant was not a change of possession or delivery thereof to defendant.

APPEAL from a judgment of the circuit court for Fond du Lac county: CHESTER A. FOWLER, Circuit Judge. *Affirmed.*

Action of replevin to recover a note and mortgage for $6,800, executed by one Hinn, March 11, 1910, payable five years from its date with interest at five per cent. The action was tried by the court. The essential facts were practically undisputed and were as follows: The plaintiff is, and was at the times hereinafter mentioned, the duly appointed and qualified executrix of the will of one Roger Whinfield, who died prior to November, 1909, leaving plaintiff, his executrix, sole beneficiary. The estate inventoried ·about $170,000. In November, 1909, plaintiff, being. about to leave the state for a time, executed and delivered to Nathaniel W. Sallade a very sweeping power of attorney, giving him full power to deal with, invest, and reinvest the moneys, ' funds, and securities of the estate, stipulating only that the moneys be deposited in the Fond du Lac National Bank when received by him. At the same time the securities of the estate, which were kept in a safety deposit box at said bank, were turned over to him. Sallade was at this time and until his death continued to be one of the defendant's trustees and was the secretary and treasurer of the board. As such treasurer he had the keeping of the funds and securities of the diocese and he deposited the diocesan funds in the First National Bank credited to his personal account and subject to

his own personal check, to the knowledge of all the trustees. During all the time covered by the transactions in controversy Sallade was greatly interested in and the active manager of a manufacturing concern called the Fond du Lac Church Furnishing Company. This concern was in failing circumstances, and prior to March, 1910, Sallade had used large sums of the funds of the Whinfield estate to keep the concern going, taking notes of the concern running to himself for the advances. At the time of his death in August, 1911, Sallade's defalcation to the estate amounted to about $50,000. In March, 1910, Sallade invested $6,800 of the funds of the estate in the note and mortgage in question, the note being payable to the order of the plaintiff. For some time prior to June, 1910, money of the diocese had been coming into Sallade's hands as treasurer. The diocesan council was to meet June 7th, at which time Sallade's duty was to make full report of the condition of the various funds in his hands and exhibit the securities, if any, to the finance committee. He should have had $5,040 in cash in his hands, but as matter of fact had only $3,248.48 to his credit in the bank, having used the balance for his own purposes. In order to prepare for his accounting to the diocese he represented to the other members of the executive committee of the trustees on June 3d that the Hinn mortgage was for sale and proposed that the diocese invest its money in this security, representing that there was $5,040 on hand and that the trustees should give the note of the diocese for $1,840 to make up the total amount of $6,880 necessary at that time to purchase the security. The committee consented to this plan, the note was given, the proceeds credited to Sallade's personal credit at the bank, and Sallade in a few days checked out the entire sum then in the bank, *i. e.* $5,088.48, and deposited the same in another bank to the credit of the manufacturing concern before mentioned. No part of the money

ever went to the credit of the Whinfield estate. Sallade listed the mortgage in a book kept by him as treasurer of the diocese, and noted therein that $6,880 was paid for it. No assignment of the note or mortgage was ever made nor were they ever indorsed. At the meeting of the council on June 7th this note and mortgage was reported by Sallade as a security of the diocese in hand and was produced by Sallade, examined and checked over by the auditing committee, with the other securities scheduled, but this committee made no report. No assignment was produced to the committee with the Hinn mortgage, but the omission was not noticed. In March, 1911, Sallade collected the annual interest on the Hinn note and turned the same over to the diocese. The mortgage was reported by Sallade as belonging to the diocese at the June, 1911, meeting of the diocesan council and the accounts and securities were checked over as in 1910. The committee at this time reported that the securities had been examined, the expenditures checked up with the vouchers, and found in due order and correct as reported. No assignment, however, was present at this time. *Mrs. Whinfield* returned to Wisconsin for a few days in September, 1910, and testifies that she then examined the securities of the estate in the safety deposit box and found the Hinn note and mortgage among them. There is nothing in the case to discredit or contradict this testimony, and the trial judge was convinced of its truth. Sallade died August 10, 1911, and after his death the note and mortgage in suit were found in his desk at the office of the manufacturing establishment aforesaid in a bundle of other securities which were duly assigned or indorsed to the diocese and unquestionably belonged to the diocese, but no assignment of the note and mortgage in suit was found or ever has been found and the note was never indorsed. The executor of Sallade's estate turned over all these securities to the trustees, and hence this action.

The trial judge concluded on these facts that the plaintiff was the owner of the note and mortgage and entered judgment accordingly, from which the defendant appeals.

For the appellant there was a brief by *T. L. Doyle,* attorney, and *F. W. Foster,* of counsel, and oral argument by *Mr. Doyle.*

For the respondent there was a brief by *Thompson, Thompson & Jackson,* and oral argument by *J. C. Thompson.*

WINSLOW, C. J.    In this case one of two innocent parties must suffer, and the only question to be determined is which one.    That depends entirely upon the title to the note and mortgage in suit, and that question does not seem difficult. When the note and mortgage were executed they were made payable to the plaintiff as security for the repayment of moneys advanced from the Whinfield estate.    There can be no doubt, therefore, that the plaintiff originally had both the legal and equitable title.    How then did the diocese acquire title?    Not by assignment or indorsement of the note, for neither is shown.    Not by delivery of possession, for the possession of Sallade was just as much plaintiff's possession as it was defendants', and the mere exhibition of them to the auditing committees at the time of the diocesan councils cannot be called a change of possession.    The diocese has no greater equity than has the plaintiff.    Both had advanced money to pay for the securities and the money of both had been used by the unfaithful trustee, who deceived his principals and juggled the securities back and forth as he was called on by either one to account for his stewardship.    The equities being evenly balanced, the party who has the legal title must inevitably prevail, and that party is the plaintiff.

*By the Court.*—Judgment affirmed.